UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOPE CHUNG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>INTELLECTSOFT GROUP CORPORATION, et al.,<br><br>    Defendants. | Case No. 21-cv-03074-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM**<br><br>Re: ECF No. 162 |

Before the Court is Plaintiffs and Counterclaim defendants Hope Chung and Picture Mandarin LLC's (collectively "Plaintiffs") motion to dismiss Defendant and Counterclaimant Intellectsoft, LLC's ("Intellectsoft") counterclaim. ECF No. 162 ("Mot"). The Court will grant the motion.

**I.      BACKGROUND**

Plaintiff Hope Chung ("Chung") is the founder and CEO of Plaintiff Picture Mandarin, LLC ("Picture Mandarin"). ECF No. 51 ("SAC") ¶¶ 1–2. Plaintiffs hired Intellectsoft with the goal of developing a website, mobile application, and other software-related work product for Chung that would serve as a part of an educational program intended to teach Mandarin to children. *See* SAC ¶ 12. Specifically, Plaintiffs hired Intellectsoft to work on two projects—the Picture Mandarin Project and the Friendship Diary project—and executed two Statements of Work relating to the two projects (the "SOWs"). *See* SAC ¶ 13; ECF No. 160 at 31. According to the SOWs, "[i]nvoices will be submitted bi-weekly" and "Client will pay Intellectsoft within 15 days of the date of each invoice submitted for all Intellectsoft Services." ECF No. 168-3[1] at 239, 271.

---

[1] Defendants submitted copies of the SOWs as part of their pending motion for summary judgment (ECF No. 167), which the Court considers on this motion as incorporated by reference into

The SOWs further provide that "[p]ast due obligations will bear interest at the rate of 15% per annum, or the maximum rate allowed by law, whichever is less." *Id.*; *see also* ECF No. 160 at 32.

Between 2016 and 2017, Defendants sent Plaintiffs regular invoices for work done pursuant to the Picture Mandarin and Friendship Diary projects. In total, Defendants sent five invoices totaling $77,269.40 relating to the Picture Mandarin project, and 11 invoices totaling $246,655.35 relating to the Friendship Diary project. *See* ECF Nos. 51-4; 51-5; SAC at ¶ 74. Plaintiffs ultimately paid these amounts in full. *See* ECF No. 160 at 17 ("Defendants admit that Plaintiffs paid $323,924.75 to Intellectsoft.").

The parties' business relationship ultimately broke down, and Plaintiffs sent notices of termination of the SOWs on April 29, 2017. *See* SAC ¶ 67; ECF No. 160 at 12; ECF No. 165 at 6; ECF No. 168-3 at 346. Intellectsoft acknowledged the termination notices on May 2, 2017, and the parties agree that the SOWs were terminated on that date. *See* SAC ¶ 68; ECF No. 165 at 7.

Plaintiffs filed this case on April 27, 2021 against Intellectsoft's parent company, Intellectsoft Group Corporation ("IGC"), and added Intellectsoft as a defendant in its Second Amended Complaint on October 8, 2021. *See* ECF No. 1; SAC. Intellectsoft counterclaimed, alleging that Chung had failed to make timely payments on eight invoices (Invoice Nos. 6064, 6074, 6090, 6104, 6119, 6138, 6158, and 6191, collectively, the "Past-Paid Invoices"). ECF No. 76 at 31–32.

Plaintiffs moved to dismiss Intellectsoft's counterclaim on the grounds that it was barred by the statute of limitations. ECF No. 80. The Court granted the motion with leave to amend, finding that "the last of Chung's payments for which there is any support in the record occurred on or about November 2, 2016" and therefore, "the statute expired on November 2, 2020, months before the filing of the counterclaim." ECF No. 157 at 6. In response, Defendants amended their counterclaim to incorporate by reference Invoice No. 62182 (the "May 2017 Invoice"), dated May 5, 2017. ECF No. 160 at 31, 35. Intellectsoft alleges that the May 2017 Invoice was "due on May

---

Intellectsoft's counterclaim. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (A document may be incorporated by reference where the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim.").

2

20, 2017 [and] included time worked through at least April 29, 2017 pursuant to work logs that have been produced in this case." *Id.* at 31. Plaintiffs now move again to dismiss the counterclaim on the grounds that, because the May 2017 Invoice was pre-paid on March 24, 2017, Intellectsoft's counterclaims are still barred under the relevant statute of limitations. Mot. at 7–10.

## II.     LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss a counterclaim for failure to state a claim is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015); *see also Oracle Am., Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 900 (N.D. Cal. 2013). However, "on a motion to dismiss a counterclaim, the Court cannot accept as true factual allegations alleged by the moving party in the initial Complaint . . . ." *State Farm Life Ins. Co. v. Landfried*, No. 5:19-cv-1845-SVW-SHK, 2020 WL 5356706, at *3 (C.D. Cal. June 25, 2020) (emphasis omitted). Accepting allegations in the initial complaint as true "would turn the Fed. R. Civ. P. 12(b)(6) standard on its head, permitting [plaintiff] to rely on its own (disputed) factual allegations to dismiss [defendant's] Counterclaim at the outset of this litigation." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). ).

## III.    DISCUSSION

### A.     Partial Payment Under Cal. Code Civ. P. § 360

The first question before the Court in this motion is whether Intellectsoft's amendment to its counterclaim, which incorporates by reference the May 2017 Invoice, cures the deficiencies

3

identified in the Court's prior order dismissing the counterclaim as being barred under California's four year statute of limitations. On its face, the May 2017 Invoice is dated May 5, 2017, and states it was due May 20, 2017 and was paid on March 24, 2017. ECF No. 160 at 35.

Intellectsoft argues that the May 2017 Invoice constituted a partial payment or acknowledgement of a continuing contract under California Code of Civil Procedure § 360, such that its counterclaim did not begin accruing until May 5, 2017. Plaintiffs argue that for the purposes of the partial payment doctrine under California Code of Civil Procedure § 360, the Court must look to the date of the actual payment as the date when a claim begins accruing. Because Plaintiffs' last payment was made on March 24, 2017, more than four years prior to the filing of the Complaint, Plaintiffs argue that Intellectsoft's counterclaim is still time-barred.

The Court agrees with Plaintiffs. California Code of Civil Procedure § 360 provides that:

> No acknowledgment or promise is sufficient evidence of a new or continuing contract, . . . unless the same is contained in some writing, signed by the party to be charged thereby, provided that any payment on account of principal or interest due on a promissory note made by the party to be charged shall be deemed a sufficient acknowledgment or promise of a continuing contract to stop, from time to time as any such payment is made, the running of the time within which an action may be commenced upon the principal sum or upon any installment of principal or interest due on such note, and to start the running of a new period of time, but no such payment of itself shall revive a cause of action once barred.

Cal. Code Civ. P. § 360. As the Court noted in its prior order, Section 360 codifies an equitable exception to the statute of limitations defense that "part payment of a debt or obligation is sufficient to extend the bar of the statute [of limitations]." *Martindell v. Bodrero*, 256 Cal. App. 2d 56, 59 (1967). This exception is based upon the theory "that the payment is an acknowledgment of the existence of the indebtedness which raises an implied promise to continue the obligation and to pay the balance." *Id.* Accordingly, Section 360 states the general rule that, in order to be evidence of a "new or continuing contract," an acknowledgment or promise must be "contained in some writing, signed by the party to be charged thereby." Cal. Code Civ. P. § 360. The statute then states an exception to the general rule that "payment on account of principal or interest due on a promissory note made by the party to be charged shall be deemed a sufficient acknowledgment or promise of a continuing contract . . . ." *Id.* Therefore, under the express

language of Section 360, application of the partial payment exception requires the Court to look to the date of the actual *payment* of principle or interest due, as it is that act of paying that represents an "implied promise to continue the obligation and to pay the balance." *Martindell*, 256 Cal. App. 2d at 59; *see also Minifie v. Rowley*, 187 Cal. 481, 486 (1921) (finding that defendant acknowledged continuing obligation through "conduct" of partial payment, and that statute of limitations would not begin accruing until *date the payment was made*).

Intellectsoft's argument that the Court should disregard the actual date of payment because partial payment is only one way in which an acknowledgement under Section 360 can manifest is unavailing. While Intellectsoft is technically correct that partial payment is not the only way that a party may acknowledge a continuing contractual obligation under Section 360, the statute is unambiguous that any such acknowledgement must be "contained in some writing, signed by the party to be charged thereby." Cal. Code Civ. P. § 360; *see also Lazar v. Energy Unlimited, Inc.*, No. CV 07-00887 SGL (JCRx), 2009 WL 10673759, at *4 (C.D. Cal. Mar. 30, 2009) ("[F]or an 'acknowledgment or promise' to be sufficient to constitute a new or continuing contract that is sufficient to stop the running of the limitations period, that acknowledgment or promise must be in writing, and it must be signed by the party against whom a claim would be asserted."). Here, and in contrast to its cited authority, Intellectsoft has not alleged the existence of any such writing within the statutory window. *Cf. McNally v. Powers,* No. SACV 22-1569 JVS (ADSx), 2023 WL 6373407, at *4 (C.D. Cal. Aug. 2, 2023) (denying summary judgment on statute of limitations defense, based on written emails from the defendant repeatedly acknowledging existence of a debt, which showed "a reasonable inference that [defendant] unconditionally identified and acknowledged the debt owed to [plaintiff]."). Absent such a writing, Intellectsoft cannot plausibly allege that Plaintiffs acknowledged their obligations to pay interest on the Past-Paid Invoices at any point after March 24, 2017. Because the Complaint was filed over four years after March 24, 2017, Intellectsoft has failed to plead any facts sufficient to establish that the statute of limitations should be extended under California Code of Civil Procedure § 360.

**B.     Delayed Commencement Rule v. Continuous Accrual Doctrine**

Separately, Intellectsoft argues that its counterclaim is not time-barred because its

1    counterclaim only accrued upon termination of the SOWs on May 2, 2017, under the "rule of
2    delayed commencement" which permits plaintiffs, "in cases where a continuing duty has been
3    breached," to file suit "when the time for complete performance has passed." *Israelsky v. Title*
4    *Ins. Co.*, 212 Cal. App. 3d 611, 617–18 (1989). Plaintiffs counter that the Court should apply the
5    "doctrine of continuous accrual," whereby "'each breach of a recurring obligation is independently
6    actionable,' with each triggering a new limitations period." ECF No. 166 ("Reply") at 9 (quoting
7    *Gilkyson v. Disney Enterprises, Inc.*, 244 Cal. App. 4th 1336, 1341 (2016)).

This issue was presented squarely before the California Court of Appeals in *Eloquence Corp. v. Home Consignment Ctr.*, 49 Cal. App. 5th 655 (2020). In *Eloquence*, the court considered whether to apply the delayed commencement rule or the doctrine of continuous accrual to a consignment agreement between the parties, in which the defendant would send monthly sales reports to plaintiff and plaintiff would in turn prepare invoices setting forth payments due from defendant. In applying the continuous accrual doctrine, the *Eloquence* court considered whether the agreement "contemplate[d] divisible, interval performance by [defendant]" by looking at the express terms of the agreement, "as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." *Id* at 661. The *Eloquence* court concluded that the agreement was divisible, because the express terms of the agreement required defendant to pay discrete invoices within a certain deadline, the subject matter of the agreement required plaintiff to issue discrete invoices dependent on sales or inventory of a particular month, and the parties' subsequent conduct showed no evidence that unpaid amounts on one invoice were ever carried onto any subsequent invoice. *Id.* at 662.

*Eloquence* is instructive here. As in that case, the SOWs here provided that Intellectsoft would issue discreet invoices dependent upon hours worked, that Plaintiffs were required to pay these discrete invoices within a certain period (15 days), and that Intellectsoft never carried unpaid interest on the Past-Paid Invoices onto subsequent invoices. Similarly, as in *Eloquence*, Intellectsoft's counterclaim "is not based on some continuing obligation; rather it arises out of [Plaintiffs] failure to perform its discrete and specific obligations" to pay the Past-Paid Invoices in

6

time. *Id.* at 663. Therefore, the Court finds that the SOWs, like the agreement in *Eloquence*, "establish divisible, interval performance by [Plaintiffs] of [their] payment obligations" such that the doctrine of continuous accrual applies. *Id.* at 662.

*Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distributors of Evansville, LLC*, No. 10-00317 CW, 2010 WL 1957423, at *2 (N.D. Cal. May 14, 2010), cited by Intellectsoft, is distinguishable. The invoices in *Dreyer's* were issued pursuant to an overarching credit agreement between the parties, wherein the defendant agreed to pay "all amounts due" and the plaintiff chose to extend credit to the defendants until the final invoice became due. *Dreyer's*, 2010 WL 1957423, at *1–3. Because no such facts are present in this case, and the SOWs lend themselves "more readily to divisible payment obligations than the credit agreement in *Dreyer's*" the Court declines to apply the rule of delayed commencement to Intellectsoft's counterclaim. *Eloquence*, 49 Cal. App. 5th at 664 (distinguishing *Dreyer's*).

Because the Court finds that the doctrine of continuous accrual applies to the SOWs, it rejects Intellectsoft's argument that its counterclaim is not time barred because it only began to accrue upon termination of the SOWs on May 2, 2017.

### C. Leave to Amend

Plaintiffs request that the Court dismiss Intellectsoft's counterclaim with prejudice. The decision of whether to grant leave to amend is within the discretion of the district court, which may deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)).

The Court will deny leave to amend. Intellectsoft has previously been given leave to amend its counterclaims. "Where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (internal citation and quotation omitted). Moreover, fact and expert discovery are now

closed, and it is unlikely that Intellectsoft would be able to identify any new facts that would correct this deficiency in its counterclaim.  Finally, granting Intellectsoft further leave to amend at this stage of the litigation would cause undue delay and prejudice to Plaintiffs.  Expert discovery has been closed in this case since October 6, 2023, the parties have fully briefed Defendants' motion for summary judgment, and this case is scheduled for trial on March 11, 2024.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to dismiss Intellectsoft's amended counterclaims with prejudice.

**IT IS SO ORDERED.**

Dated:  January 29, 2024

_____
JON S. TIGAR
United States District Judge